Lopez v. Sheriff of Cook County. Good morning, Your Honors. Good morning, Mr. Delaney. You may proceed. Oh, thank you, Your Honors. Good morning, counsel for the appellee. My name is J. Paul Derritani for the appellant, Mr. Lopez. I'd like to reserve a couple minutes for rebuttal. Members of the court, the district court was incorrect in a very important way. This was not a very, very close case. Perhaps in front of a jury, it could be. Perhaps after the juries had the opportunity to weigh the facts, any evidence, and decide the many issues, it may be. But unless this court is prepared to reverse two long-held principles, long-established precedent, that one, when deciding summary judgment motions, all presumptions must be made in favor of the non-moving party. And two, that the judge should not be the arbiter of facts. This is especially true in cases such as this, excessive force cases, as the court said in Cyrus v. Town of Muckinaweeda. Summary judgment is usually inappropriate in such cases, precisely because there exists so many questions of fact. Here, unfortunately, time after time, the district court made factual presumptions in favor of the defendant, which then allowed the court to make factual conclusions against the plaintiff. Factual conclusions that only the clergy— Mr. D'Artagni, could you be more specific about that? Because when I read the district court's opinion, it seemed to me that the judge was taking a number of key facts in the light most favorable to Mr. Lopez, including the fact that Officer Raines never identified himself as a law enforcement officer, and that the gun was dropped at a particular time. And there were several other things that were really quite central to this. But the judge wound up thinking that it was if not straight up, often the direction of people who were around. I've watched all of the videos. There were actually quite a few people wandering around, considering that it was approximately 4 o'clock in the morning. So I'd like you to tell me where the judge wasn't giving Mr. Lopez the benefit of the doubt. Yes, Judge Wood. Some of the factual presumptions in favor of the attellee that Raines saw the gun, that Raines must have heard the gun. And then he used inadmissible hearsay statement that Lopez pointed the gun at him, at Raines, that he was fleeing, that he was resisting arrest. None of those factual findings, Judge Wood, should have been made by the judge. You make a lot of the first point. And I think when you watch the video, OK, it is indisputable that Mr. Raines is on the street approaching your client at the time the shots are fired in the air. And so I don't know how, as an objective matter, you can't conclude from that that he saw and heard that happening. Judge Scudder, I do think that there's a real dispute as to that because there's a lot going on. It's dark. It also a presumption could be made if we're presuming facts in favor of the non-moving party and the plaintiff in this case. Officer Raines is coming from a bar that he was drinking at with his girlfriend and his girlfriend admitted to five or four or five, six drinks. He's drinking clearly. OK, but we know that there was one shot fired by the first gentleman that stopped out of the car or that stepped out of the car. We know that. We know that for sure. Right. That's not a fact that you wish to highlight in your brief. I'll observe. But it is objectively true. I have no problem admitting that that I shot. So if Mr. Raines, if Mr. Raines is responding from the birthday gathering to that gunshot, he necessarily had to have heard it. Correct. No, respectfully, I would say, how do we know that Mr. Raines didn't get a phone call yet until we start? So I have the opportunity to cross examine. I think that if you're going to argue at that level, if you're going to argue it at that level, you're you're you're being so unfair to what's on the video that the argument is tantamount to saying that in all of these cases, there must be a jury trial. And I thought the law was fairly clear that we should. And this is what I think is very unfortunate about your position, because I think you've got some very good points to make. But when but when we can't even agree on how the table is set, that's where I think you're doing, Mr. Lopez, no favor at all. Your Honor, I'm sorry. I apologize if the court interprets that. I'm just saying that all of the facts here have to be presumed in favor of the plaintiff. I just wouldn't. So do that. Do that and make an argument. OK, Your Honor. And I think what Judge Scudder is saying is reasonably and the district judge, I'm just going to throw in before you start, doesn't even say that it's clear that Raines actually saw the shooting. But he says a couple of times, saw or at a minimum heard, words to that effect. And it's not that big of a space. And certainly somebody who's got law enforcement training could probably distinguish the sound of a gun going off from other loud, sudden sounds.  I'd like you to talk about how he gets there and starts this barrage of shooting, how Raines does. But I also want you to explain to me, once Raines has Lopez on the sidewalk, you can see the bullet entry wound, actually, in one of the videos. What does Raines actually do to Lopez other than just sit there and wave his hands around until the medical people come? Your Honor, if I could just address Judge Scudder and then your point as well, hopefully. First of all, Judge Scudder, I guess I'm not saying that he didn't hear something. I certainly think he heard something. And certainly it could have been, it may be even 70 percent, 60 percent, whatever percent sure that he heard some sort of gunfire. So I don't mean any disrespect. My only point is this, and I'm going to let you argue. My only point is you've got plenty, plenty to work with in the district court's opinion as it is written. And I can't, for the life of me, figure out why you're declaring war on that opinion. I don't mean to be hyperbolic. And if I was in my brief, I apologize. I don't mean to declare war. I'm simply stating that there are several questions. To Judge Wood's point, this was a prison guard. I'm not sure we could even say that we can presume that he knows the different, he knew the sound of gunfire. But even let's say we do. Let's just assume he does, yeah. Let's assume he does, fine. You asked about what happened after the five bullets or after he shot multiple times. He's on the ground. And I think he's certainly, I think doing what any person would do in a circumstance like that, he's bleeding out. He stumbled to the ground. And we can see that in the videotape. And he's going like this with his hand. Oh, yeah. He's just sort of weakly flapping his hand around. I don't buy what the city says at all or the Cook County people. He's not like punching Officer Raines. He can barely move. You can see that by the arm. Right. So I'm not sure if I'm addressing your question. But I think that it's- I just wonder what additional harm came to him at that stage. You've divided this up into more or less three points. The first bullet, then the barrage of the next, emptying the gun out in him, shooting him the six times, and then the human shield period. But I don't know really what- he's already very injured. I don't know what happens to him other than just waiting for the medics when he's on the sidewalk. I think we would have to, in fairness, wait for a jury to even determine that after hearing the medical evidence in the case. I certainly think he's bleeding out at the time. It was excessive force. We don't, in America, put people in chokeholds. Then when they're unarmed and continue to keep shooting people- Maybe it's the chokehold. Maybe it's inflicting further injury on him of a minor nature compared to the other injury he's already had. Perhaps. I think we'll have to hear the medical testimony on that. But to address your points about- and just using the gram factors in the last few minutes I have. You know, if we look at the severity of the crime, at the time that Raines saw Mr. Lopez, I don't think it's disputed that there was no crime being committed at that particular moment when the first shot is fired. At that point, it is certainly at minimum arguable or question the fact that the gun was at his side or possibly dropped. Secondly, whether Lopez was a threat, if the gun was at his side or on the ground, he certainly wasn't a threat. And third, was he actively resisting address or attempting to flee? I find this argument by the defense to be quite incredulous because he can't resist arrest if he doesn't know the police are even there. And Raines did not identify himself. Or at minimum, there's a question of fact. I know the defense uses hearsay statements in the police record to try to dispute that, to which we respond back. But the district court assumed that Raines did not identify himself, taking the facts as appropriate, favorably to you. So in fairness, if the court's to make presumptions, they should in favor of the plaintiff. Lopez is reasonably defending himself from an attack from the start. He's using a gun to prevent further harm. He was at his car with the gun to his side. That the man, Mr. Raines, being at a bar was possibly or probably intoxicated. He didn't identify himself. He shot him without identifying himself. And then after Lopez dropped his gun, continued to shoot him. He continued to pursue Mr. Lopez, who had no gun, in an effort to murder him. Then he used Mr. Lopez in a chokehold as a shield to continue an assault. That should be the facts in favor of the plaintiff. You know, as the court said, if this court found in favor of Appelli, it would be a pretty In George versus Morris, a man had a gun and did not drop it even after the uniformed officer gave a command. And the court said summary judgment was improper. In Tennessee versus Garmin, a uniformed police officer identified himself and shot a fleeing burglar after being told to halt. And that was not considered to be, at minimum, was a question of fact. The court in Ellis said, you can't shoot a fleeing suspect, even if he committed a crime. And certainly, Lopez had not committed a crime when Raines shot him. And then shooting him five times, one has to ask, why would Raines keep shooting an unarmed man that he admitted was unarmed, stumbling and bleeding on a sidewalk? And then finally, when the district court said Lopez didn't surrender, how do you surrender to a man who does not identify himself? As Judge Wood points out, the court did presume that he didn't identify himself. But how do you surrender to somebody who does? You know, where in the record did Officer Raines admit that when he fired the shots, he knew that Mr. Lopez was unarmed? Can you do you have the specific reference in the record in mind? I'm sorry, I don't have a specific reference. But, you know, to be fair, Judge Scudder, this is, I think, this, along with a couple of the other statements. Well, that's a pretty, it's a pretty significant. If Officer Raines admitted that he fired shots two through five or six, I'm not sure what the total was. When he had knowledge that Mr. Lopez no longer possessed a firearm, that's significant. And I know you've argued that and what I've tried to do is find it in the record. Unless I'm mistaken, I believe it's in the police report, which, and I'm going to admit to you, Judge Scudder, along with defense counsel, were using certain things which would be questionable as to whether they would be admissible under either the Dead Man's Act or hearsay rules. Because but yet defense counsel used them and I suppose I used them as well. But certainly, again, let's assume it's not admissible. Presuming the facts in favor of the plaintiff, it's pretty clear he does drop the gun and then Lopez or Mr. Raines continues to shoot. You know, in Sled versus Lindsey, this court held that a plaintiff who was holding a gun in his chest was, that it was unjustified in shooting that plaintiff in that case. Can I just interject since your time is about to expire? On page 19 of the district court's opinion, the district court does say, viewing the facts in the light most favorable to Lopez, the court takes as true that Raines did see Lopez drop the gun. So at least as to that gun, a fair inference would be that Raines knew that Lopez didn't have the gun anymore. It's not like, it's not like he's taking as true that Lopez dropped the gun. He critically says Raines saw Lopez drop the gun. Yes, yes. So and that was a fair inference, which then begs the question, why would he continue to say that that was a reasonable or justifiable use of force? Thank you, counsel. Thank you. Mr. Power. May it please the court. This case is on appeal from a district court summary judgment ruling that defendant officer Michael Raines was entitled to qualified immunity for his shooting of the plaintiff, Fernando Lopez. That judgment should be affirmed. As depicted in the security video footage in the early morning hours of November 30th, 2014. After a night of drinking, Plaintiff Fernando Lopez sideswiped a parked car outside of the Funky Buddha Lounge in Chicago and almost hits a few pedestrians on the side. Bystanders approach plaintiff's automobile, at which point plaintiff and his passengers, including Mario Orta, exit the car. One of the passengers pulls out a handgun, points it at bystanders, and discharges the gun in the air, causing the bystanders to flee. Plaintiff then takes the gun from his passenger and repeatedly points the gun in the direction of the fleeing bystanders while chasing them across the street. Indeed, Plaintiff later pleaded guilty to aggravated discharge of a firearm and stipulated to the factual basis of that charge, being that when the handgun was dropped, sorry, when the handgun was displayed, Terrence Hudson and others who had approached ran away from the vehicle the defendant was driving towards the south side of Grand Avenue. After these individuals, including Terrence Hudson, ran from the vehicle the defendant was driving, the defendant discharged the firearm that he was carrying in the direction of Terrence Hudson and others that had fled from the vehicle. But you can see from the video, it's not at them. It's up in the air in the general direction. And I think that's a fair reading from the video, Your Honor. It's in their general direction. He doesn't carefully take aim at anyone. It's sort of like almost over his shoulder. If you can call this a casual move, it's sort of a casual move. Let me get to one of the points that concerns me about your argument. It's well established that the fact that somebody has pleaded and been found guilty of the offense that Mr. Lopez was found guilty of doesn't tell you anything about whether he falls into law enforcement's hands through the use of excessive force or not. It could be legitimate force and you could be convicted or there could be excessive force. And in fact, there are all sorts of rules about accrual of claims and the like. And this claim asserts excessive force. So I don't see any heck against Humphrey problem here. The second thing that worries me a lot about this case is the fact that unlike in some who this guy is who comes running up to him and decides to start tussling with him, and there are all kinds of vigilantes out there in the street who take it upon themselves to do whatever they want to do practically with guns. So I don't know how Lopez was supposed to know that when that first gun shot comes off, that Raines has anything to do with law enforcement. He's just dressed very casually as one would be who's out for an evening with their friends. And I'm very worried about the additional shooting after, as the district court takes it, Raines sees that Lopez drops the gun. Now, of course, obviously at a trial, maybe a jury would find that Raines didn't see that. But we take this, that Raines sees Lopez lose the gun. And then he plugs him five or six more times. That's very troubling. And Your Honor, if I could take those points in turn, starting with Heck v. Humphrey, I think Heck needs to be read a little bit more broadly. And in Tolliver v. City of Chicago, this court has read it broadly in other cases as well. We've been very careful, as the Supreme Court has told us, to distinguish those things that are necessarily incompatible with the conviction. The conviction rules in those cases versus things such as excessive force that are not necessarily incompatible with the conviction. Right. And that case law also says that the plaintiff is confined to the set of facts that are necessary to that conviction. And the set of facts are that he intentionally and knowingly fired in the direction of Terence Hudson. Yeah. And it doesn't tell us anything about whether Officer Raines used excessive force or not in subduing him. Doesn't tell us a thing about that. We can accept, like, the gospel truth, that set of facts for which he was lawfully convicted. But I don't see where that tells us anything. Does that tell us that Lopez could have shot him 45 times? Does that tell us, you know, it is quite possible that, I'm sorry, Raines shooting Lopez multiple times. Those are just different inquiries. That's absolutely correct. And if Lopez had said, hey, I committed the crime, but excessive force was still used against me, that's certainly a valid argument to make. And that's basically the argument that he's making. If he's pushing back against the conviction, we can just say that's a bad argument. But it doesn't mean he hasn't made good arguments, too. Have you ever found a time where every line was perfect and the court maybe didn't find fault with an argument or two? Your Honor, I think respectfully in his complaint, in his deposition testimony, in his briefing before this court, he's repeatedly stated that he was not shooting in the direction of Terrence Hudson. But we can just disregard that. That's not a critical point. We can say, you know, you're not right about that, but there's still an excessive force claim. It's just, you know, what time did the sun rise? I mean, it doesn't have anything to do with it. Your Honor, I take your point. I still contend that a plaintiff should be confined to the set of facts that he pled guilty to, and that's not what he's doing here. And under that theory, that heck would bar this case. Well, if we're going to find fault, in your brief, you frequently sort of slide beyond the set of facts that the district court took as it construed the arguments and the like most favorable to the plaintiff. So, for example, on page 35 of your brief, you say, as plaintiff returned to his car to flee the scene, Officer Raines approached the plaintiff, announced himself, and ordered plaintiff to drop his firearm. When plaintiff did not comply, Officer Raines shot a plaintiff. Those facts are flatly inconsistent with what the district court said we needed to act upon at this stage of the case. It was contested whether he announced himself. And the district judge said, I'm going to give that one, for right now, anyway, to Mr. Lopez. Whether there was an order to drop the firearm, contested. And the judge appropriately, again, says, for right now, we give it to Lopez. So, if we're going to get picky, I think two sides need to be subjected to that. And I think that's right, Your Honor. And, you know, as you mentioned during Mr. D'Artagnan's argument, the district court repeatedly drew the factual inferences in plaintiff's favor, but still found for the defendants. And so, you know, there were no factual disputes, really material factual disputes, drawn in defendant's favor. But nevertheless, viewing the objective video, as this court directs district courts to do, the district court found that Officer Raines did not use, or rather was entitled to qualify. Explain to me, I mean, after I watched the video, another thing about your brief is you greatly overstayed, in my opinion, having watched the video, this sort of flailing that Lopez is engaged in as he's on the sidewalk in the chokehold. He's just kind of flapping his arms, and this other guy keeps coming up to him, and there may be some conversation. We don't have audio, unfortunately. So, I thought that got overstated. And I don't understand, after somebody's dropped a gun, why, you know, an off-duty, unidentified police officer can plug him six times. And, Your Honor, I think— Is that a rule? That, you know, we just kill people because we feel like it? And I think there are a couple of issues there. Turning to whether or not Raines saw Lopez drop the gun, the district court did find that, did presume that Raines saw it. However, plaintiff's own expert testified that the gun was still in Lopez's hands for the first four shots, and that the total time from the first to the sixth shot was 2.2 seconds. So, that is exactly these blink-of-an-eye circumstances the courts talk about, that we don't want to get into second-guessing officers and how they're responding in these blink-of-an-eye circumstances. Mr. Powell, this aspect of the fact pattern is what concerns me, because I don't think that Officer Raines admitted to seeing the gun dropped. But what he admitted is neither here nor there. We have to take what Mr. Lopez has pled, right? And the district court did that. And why is it in this circumstance that he's allowed to pull the trigger more than once? Because when he runs and he approaches, this is a very volatile situation. If the video shows nothing else, it shows that. And he shot him once. And it's just objectively clear that he hit him with the first shot. Where does the authority to come from to fire those? Where does the authority to shoot the additional times come from? Because plaintiff remains armed and dangerous. Again, as the video shows, he did not immediately drop the gun after that first shot. The gun was still in his hands for the first four shots. Lopez remained armed, remained dangerous, and the threat was not neutralized. So your position is the one the district court adopted, that it's the split second nature of this. Yes, in part, it's the split second nature of this. And also a reasonable officer who has arrived on the scene and sees that, you know, it's not just Lopez, it's Horta. He has people in his entourage. It's a very volatile, dangerous situation. He's heard one gunshot that he responded to. Reins has no reason to believe that's necessarily the only gun in Lopez's possession. Reins has no reason to believe that the threat is necessarily neutralized just because this one gun has been dropped. And it took two and a half seconds. That's two, I believe, 2.2 seconds is what plaintiff's expert testified to. The entire time that Reins was shooting from the first to the sixth shot was 2.2 seconds. And the gun was still in Lopez's hands for the first four shots. So can I ask you a question about the human shield aspect of this? Sure. So suppose, for example, that Officer Reins did the exact same thing, except the person that he was using to shield himself was a lounge patron and not Mr. Lopez. Would your argument change? You know, I think it would, and I think the district court went into this in terms of the question of qualified immunity. You've got to take into the entire circumstances here that Lopez was not, you know, a lounge patron. Lopez was someone that Officer Reins was trying to arrest and keep under control and in custody while these other people are trying to come up and get Lopez out of his custody. Frankly, you know, we can disagree on what the video shows. I don't think there was a chance he was going to lose custody of him, by the way. I mean, I really don't. The gentleman was shot five or six times. And, Your Honor, Mario Orta also shot at Officer Reins. You know, if Reins had, you know, socially distanced and stood six feet away from Lopez on the sidewalk, if Reins then gets shot, well, then Orta comes and takes Lopez and they flee. You know, I think the only way for Officer Reins to keep Lopez in his custody was to hold on to him while also defending himself, trying to use his spare arm to threaten Orta, with an unloaded gun, who is out of bullets at this point. He is alone. There's no backup present. And he is doing his level best to accomplish those two ends of keeping a felon in his custody and under arrest and to defend himself from being killed. So, you know, again, I think the district court got this case right. In terms of qualified immunity, plaintiff has not pointed to any closely analogous cases, either in terms of the interaction, the shooting on the street or then the interaction on the sidewalk. Plaintiff has not pointed to any closely analogous cases that would have told Officer Reins or a reasonable officer acting in those circumstances that what he was doing violated Lopez's rights. Similarly, the district court did not reach the issue of whether or not, you know, excessive force was used. I believe this court can affirm on those grounds that, again, in both situations, in the street or on the sidewalk, Officer Reins did not use excessive force. He acted as a reasonable officer in a very tense and fraught situation would have done. And then lastly, I would like to, you know, make the point again about Heck v. Humphrey. Plaintiff should be confined to the set of facts that he already pled guilty to. And that's not what he's doing by pursuing the suit. And he's, therefore, attempting to call into question the validity of that prior conviction. And if the court has no further questions, defendants ask that this court affirm the district court's judgment. Thank you. Thank you. Thank you, Mr. Power. Mr. De Draney? We can't hear you. I'm sorry. Thank you. Learning the new rules here. If I could address a couple of the points. I think Judge Wood and Judge Scudder did get it right in a sense that we look at Shedd v. Lindsey and we analogize this case. We don't know, and certainly Mr. I'm sorry, I should say Mr. Lopez doesn't know whether Mr. Reins is a vigilante, whether Mr. Reins is a gang member, whether this off-duty prison guard who was drinking at a bar was one of the assailants who was punching him in the window of the car just a couple of minutes earlier. I don't think Mr. Reins had acted unreasonable, or I'm sorry, I don't think Mr. Lopez acts unreasonably to drop his gun and move away from this assailant and to continue to shoot him five or six times. And I want to address a point that Judge Kane had made with regard to, or in response to defense counsel with it being 2.2 seconds and then defense counsel said, look at the whole circumstances. If Officer Reins had shot him once, there wouldn't be 2.2 seconds. All he had to do if he supposedly really thought he was, and this isn't conceding this point, I don't think he should have shot him even once, but if he shot him once while he's dropping his gun, you don't continue to shoot a man while he's stumbling away. And 2.2 seconds is not very long to empty your gun. It isn't, Judge Kane. But it was still, it's still his choice to empty the gun. It was still the officer's choice to empty the gun, those five or six seconds, whether it's 2.2 seconds. If he thought somebody would shoot you, what would you do? Just, I'll only fire once? If I, first of all, if I, I think that if any of us were in, if any of us were in the circumstance that Mr. Lopez was in, we would have acted the same. We would have fired a gun in the air to disperse attackers. But beyond that, if I were in Officer Reins' position, I certainly would have announced myself and then something wouldn't have happened. I would have said, I would have probably not gotten involved at that point. But if he wants to get involved, fine. You, you announce yourself, you announce you're a police officer, you say, halt. And if you, and if, and you don't shoot him even the first time because he didn't shoot at you. Now, if I overextended the brief, I apologize, but I'm saying here that he did, what he didn't do was not, he did not shoot at Mr. Reins. He did not point the gun at Mr. Reins. That's perfectly consistent, as Judge Wood pointed out, with the hack case and so forth. He wasn't pointing a gun at Mr. Reins. You had an un-uniformed police officer, a prison guard who was drinking at a bar and came and assessed the situation on his own and decided to start shooting. He could have made the choice not to shoot the very first shot until he announced himself as his proper. And in Shedd versus Lindsey, you know, even in a case where there is a man who was, had a gun approaching, and he was approaching, had a gun to his chest, the court, in this case, in this circuit said it was inappropriate. Let me conclude by saying 12 people may view the same accident. 12 people here may view the same video, but have 12 different versions of what they saw or heard. But when we collect those individuals together in a jury room, it is sacrosanct. And their collective recollections, their collective wisdom, after hearing the full evidence, is what our justice system is about. And this is the precise type of case, as so many cases have held before, when it's a police force case, that should be decided by a jury of our peers. Because any one of us, any single one of us, could have been in Mr. Lopez's circumstances. And I believe if I were in Mr. Lopez's circumstances, I would have shot a gun in the air, maybe even toward people, because it's consistent with ACT, so that they dispersed and then attempted to get in my car and drive away. Thank you, counsel. Thank you, counsel. Thank you. Thank you very much, members of the panel. The case will be taken under advisement.